UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Neiberger and Associates

Plaintiff,

v.

Kasel Associates Industries, Inc., and
Kasel Mechanical Services

Defendants.

Civil No. 02-70 JMR/FLN

**REPORT AND RECOMMENDATION**

---

George Warner, Esq. for the Plaintiff.
Philip Krass, Esq. for the Defendant.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on April 4, 2003, on Plaintiff's Motion for Partial Summary Judgment [#26]. This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's Motion for Partial Summary Judgment [#26] be granted to the extent it seeks a legal judgment that the agreement between the parties was a Sales Representative Agreement within the meaning of the Minnesota Statute.

## I. BACKGROUND

Kasel Industries, a Colorado corporation, through its President, Raymond Kasel ("Kasel") is involved in various business operations that include smoked pig ears, sheet metal, the management of several businesses and meat slicing manufacturing. (Affidavit of Raymond Kasel at ¶ 2, February 25, 2002). Plaintiff, Neiberger and Associates is a Minnesota subsidiary of Sharden Incorporated



JUN 06 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

that acts as an independent sales representative selling a wide variety of consumer goods to retailers on behalf of manufacturers. (Affidavit of Denny Neiberger at ¶ 3, March 28, 2002). Denny Neiberger ("Neiberger") has thirty plus years as a manufacturer's sales representative dealing with retail sellers of pet treat and pet food products. (Id. at ¶4). Neiberger and Kasel engaged in several discussions and meetings regarding the brokering of pet products during 1999 and 2000. (Kasel Aff. at ¶¶ 4-9; see also, Neiberger Aff. ¶¶ 7 & 8). Kasel had been unable to deal directly with Sam's Club previously and wanted the opportunity to eliminate, Northtown, the middleman for the Sam's account. (Id.) Neiberger agreed to introduce Kasel to his contacts in several retail store chains, including Sam's Club for the solicitation of wholesale orders using the Electronic Data Invoicing System ("EDI") . (Kasel Aff. at ¶ 6 and Kasel dep. pp. 59, lines 4-12, and 75-76, lines 25- 25, see also, Neiberger Aff. ¶ 12). As accepted by the industry as a standard and custom, no written agreement was drafted to memorialize the agreement. (Neiberger Aff. ¶ 14, see also, Kasel dep. pp. 50-60, line 12-25). Neiberger, arranged and attended a meeting with Sam's Club buyer's and Kasel in Bentonville, Arkansas. (Kasel Aff. at ¶ 6, see also, Neiberger Aff. ¶ 16). The result of the meeting produced an award of purchase orders for 50% of Sam's Club petfood business provided by Kasel and his product. (Kasel dep. p. 78, line 6-9;see also, Neiberger Aff. ¶ 18). Several other meetings were set up by Neiberger for Kasel with national retailers who where prospective clients that resulted in purchase orders for Kasel. (Neiberger Aff. ¶ 51, 57, 63, 66; see also, Kasel dep. pp. 136, lines 8-25, and 118).

This dispute arises from the relationship of the parties during the dealings with Sam's Club. Though the two parties have had previous sales representative agreements, it is disputed in this action whether the oral agreement was a sales representative agreement that included a five percent

of net sales commission or a finders fee for the Sam's Club account. Neiberger claims the unwritten sales representative agreement with Kasel under Minnesota Statute 325E.37, the Minnesota Sales Representatives Act ("MSRA" or the "Act") was for five percent commission of the purchase orders from accounts that he help to land, like Sam's Club. Neiberger claims that the initial commission payments were accompanied by copies of the purchase orders received from Sam's Club, but later random payments were made without invoice copies. Eventually no payments were made.

Kasel agrees that Neiberger set up the Sam's Club meeting, but claims Neiberger's role in the Sam's Club transaction disqualifies him from being a sales representative, because he was not responsible for the presentation to the buyers, or the offer or sale of Kasel's goods. Neiberger's sole activity was to arrange the initial meetings between Sam's Club and other national retailers. Moreover, Sam's Club has a strict policy that it will not deal with brokers, but only the manufacturers directly, therefore Neiberger was aware that he could not be a sales representative on the account. Thus, Neiberger was not compensated by commission, but paid a finders fee for introducing the buyers to Kasel.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th Cir. 1987); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. However, if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Second, any dispute of material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Liberty Lobby, 477 U.S. at 252. If the opposing party fails to carry that burden, summary judgment should be granted. See Celotex, 477 U.S. at 322; Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

## B. The Contract Between Neiberger and Kasel was a Sales Representative Agreement

**Within the Meaning of the Act**

Counts One and Two of Neiberger's Complaint allege breach of contract and violation of the MSRA pursuant to Minn. Stat. 325E.37. Neiberger and Associates seeks partial summary judgment on these claims.

A breach of contract occurs when one party renounces liability under the contract or fails to perform. See, e.g., Associated Cinemas of America, Inc. v. World Amusement Co., 276 N.W. 7, 10 (Minn. 1937). A party becomes liable for the breach when it is shown that damages resulted from the breach. Nguyen v. Control Data Corp., 401 N.W.2d 101, 105-6 (Minn. Ct. App. 1987). The question of whether a contract is formed is determined by considering the parties' objective conduct and not their subjective intent. See Gresser v. Hotzler, 604 N.W.2d 379, 382 (Minn.Ct.App.2000).

The object of a sales representative agreement like the one at issue here, is to solicit obtain orders for the manufacturer. Subdivision 1 of the Minnesota Termination of Sales Representatives Act provides in pertinent part:

> (e) "Sales representative agreement" means a contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between a sales representative and another person or persons, whereby a sales representative is granted the right to represent, sell, or offer for sale a manufacturer's, wholesaler's, assembler's, or importers goods by use of the latters trade name, trademark, service mark, logotype, advertising, or other commercial symbol or related characteristics, and in which there exists a community of interest between the parties in the marketing of the goods at wholesale, by lease, agreement, or otherwise. "Wholesale orders" means the solicitation of orders for goods by persons in the distribution chain for ultimate sale at retail.

Minn. Stat. § 325E.37, subd. 1(e)

The parties are in accord that Neiberger's task at the very least, was to use his industry

contacts to establish an opportunity for Kasel's products to be sold in a larger retail market. Clearly, some communication and understanding between the parties existed to encourage Neiberger's efforts in arranging meetings for Kasel and the buyers of Sam's Club and other companies. The overt action of contacting companies arranging meetings, traveling to the meetings and participating in the meetings leads this Court to conclude there was an oral contract between Kasel and Neiberger, therefore the issue for this court is whether the contract meets the requirements of a sales representative agreement as define in the Act. Under the Act a sales representative is:

> a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission.
> Sales representative does not include a person who:
> (1) is an employee of the principal;
> (2) places orders or purchases for the person's own account for resale;
> (3) holds the goods on a consignment basis for the principal's account for resale; or
> (4) distributes, sells, or offers the goods, other than samples, to end users, not for resale.

Minn. Stat. § 325E.37, subd. 1(d)

There is no dispute on Neiberger's principal place of business being Minnesota. Mr. Neiberger has attested to thirty plus years of experience as a sales representative. In his employment position with Sharden Inc. Neiberger is regarded as a sales representative. Kasel admits that his understanding of why Neiberger attended the sales meetings with him and buyers was to have any orders solicited go through Neiberger. (See Kasel Aff. p. 76.) The ability to use Neiberger's access to EDI was also a benefit of the relationship for Kasel. Kasel was also aware that other dealings with Neiberger on the Koval Marketing group account, is compensated by commission, and used Neiberger's skills and experience as a sales representative to successfully draw more pet food business. It is not for this Court to determine if Sam's Club's policy regarding it's refusal to deal

with brokers frustrates the purpose of the agreement between Kasel and Neiberger. What is important is that Neiberger continued to function as a sales representative for Kasel despite that complication, introducing Kasel to other buyers and attending out of town meetings.

Lastly, Kasel initially made payments to Neiberger that are indicative of the percentage based commission attested to by both parties. Kasel's argument now that the payments were arbitrary, and merely a finders fee is impeached by amounts of the payments made that coincide with Kasel's testimony regarding the percentage he understood would be paid to Neiberger. It is unclear why the delivery of payments and their accompanying invoices were altered, however it does not change the fact that commissions are owed to Neiberger under the sales representative agreement he had with Kasel. The MSRA's purpose is to protect sales representatives from using their influence to recruit retailers for the benefit of the wholesale client and being cut out of the compensation they are entitled to. A review of all the record evidence in the light most favorable to Kasel reveals that there is no genuine issue as to any material fact and that Neiberger is entitled to judgment as a matter of law. Consequently, this Court concludes that the contract between Neiberger and amounted to a sales representative agreement within the meaning of the Act.

C. **Termination of the Agreement**

From the present record, the Court is unable to determine if or when Kasel effectively terminated the sales representative agreement with Neiberger. The Court concludes that issue is not properly before the Court.

There is no dispute that payments have been made to Neiberger. A few payments accompanied copies of invoices and the amount paid clearly represented a commission. Other

payments were not accompanied by invoices, so it is not known on what they were based. Having concluded that the parties' agreement was a Sale Representative Agreement within the meaning of the Act, the Court must await the development of a more complete record before it can evaluate all of the consequences of this finding.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment [#26] be **GRANTED**, to the extent the Court concludes that the parties agreement is covered by the Minnesota Termination of Sales Representative Agreement Act..

DATED: June 6, 2003.

FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.